**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| RAMZI HALASAH, | ) | Case No. 1:10cv01660 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| THE CITY OF KIRTLAND, et al., | ) | |
| | ) | |
| Defendants. | ) | |


This case is before the Court on cross motions for summary judgment filed by Plaintiff

Ramzi Halasah (ECF # 36) and Defendant Officer James Fisher (ECF #35) in this civil rights

action brought under 42 U.S.C. § 1983.  For the reasons stated herein, Plaintiff's Motion for

Summary Judgment is DENIED, and Defendant Fisher's Second Motion for Summary Judgment

is GRANTED.

## I.  BACKGROUND

### A.  Procedural History

This Court previously granted summary judgment in favor of all defendants — Officer

Fisher, Police Chief Wayne Baumgart, and the City of Kirtland — on Plaintiff's claims  under the

Fourth, Fifth, and Fourteenth Constitutional Amendments alleging false arrest, malicious

prosecution, and failure to implement appropriate policies, customs, and practices.  The Court

determined that the existence of probable cause precluded Plaintiff's false arrest and malicious prosecution claims, and that Plaintiff failed to demonstrate any constitutional violation by Chief Baumgart.  The Court further concluded that Plaintiff's failure to establish a constitutional violation precluded municipal liability, and entitled Officer Fisher and Chief Baumgart to qualified immunity.

Plaintiff timely appealed this Court's grant of summary judgment in favor of Defendants. On appeal, the Sixth Circuit reversed and remanded with respect to Plaintiff's false arrest and malicious prosecution claims against Officer Fisher, but otherwise affirmed this Court's decision. In remanding the case, the Sixth Circuit expressly stated that "we leave it to the district court to decide whether other defenses warrant summary judgment in favor of Officer Fisher."

Following remand, the parties engaged in further discovery and conducted depositions of both Plaintiff and Officer Fisher.  Thereafter, the parties filed the summary judgment motions under consideration.

In the motions for summary judgment, the parties assert the following facts.  In ruling on the motions, the Court considers the facts asserted by a moving party in a light most favorable to the nonmoving party, as Federal Rule of Civil Procedure 56 requires.[1]

### B.  Factual Background

This case arises from Plaintiff's arrest in connection with events following his minor son's attendance at an underage drinking party.  On May 23, 2009, Officer Fisher was on routine patrol

---

[1]Plaintiff's "Statement of Facts" contained in Plaintiff's Brief in Opposition to Officer Fisher's Second Motion for Summary Judgment (ECF #38) is a verbatim reprinting of the Statement of Facts included in Plaintiff's Motion for Summary Judgment (ECF #36).  Plaintiff fails to describe in any detail the interactions between Officer Fisher and Plaintiff.

when he observed two individuals standing near a closed business.  (ECF # 34, Dep. of James Fisher, p. 9.)  Officer Fisher went to investigate, and the two individuals fled.  (*Id.* at 9-10.)  Officer Fisher had discovered an underage drinking party.  (*Id.* at 9.)  He requested assistance, and three additional officers responded to the scene.  (*Id.* at 10.)  Officer Fisher remained at the scene, while the other responding officers began rounding up the teenagers who fled.  (*Id.*)  In total, the police located between six and seven teenagers ranging in age from 17 to 19.  (*Id.*)  The police instructed the teenagers to contact their parents for them to  respond to the scene.  (*Id.* at 17.)

Plaintiff received a telephone call at approximately 1:30 a.m. and spoke to a Kirtland Police officer.  (ECF # 33, Dep. of Ramzi Halasah, p. 19.)  The officer informed Plaintiff that his minor son, A.H., had been involved in an underage drinking party, and that Plaintiff needed to pick up his son.  (*Id.*)

It took Plaintiff about 15 to 20 minutes to arrive at the scene of the party.  (*Id.* at 20, 21.)  At the scene, Plaintiff observed seven to eight teenagers, several police officers and police cruisers.  (*Id.* at 23.)  Plaintiff observed Officer Fisher, who was speaking loudly.  (*Id.* at 24.)  Plaintiff could not hear what Officer Fisher was saying.  (*Id.*)  Plaintiff testified that there were a lot of people and the scene was chaotic.  (*Id.* at 32.)  People were yelling and there was a lot of commotion.  (*Id.* at 42.)  Parents continued to arrive, and the police were attempting to get the teenagers paired with the appropriate adult.  (*Id.* at 32-33.)

Plaintiff spoke with his son, who admitted that the teenagers were having a drinking party.  (*Id.* at 24.)  Plaintiff has testified that his son, A.H., told Plaintiff that he was not drinking that night.  (*Id.*)  However, prior to Plaintiff's arrival at the scene, A.H. admitted to Officer Fisher that

3

he was drunk.  (*Id.*)  Whether A.H. was actually intoxicated is irrelevant to the claims before this Court.

Amid the confusion at the scene of the underage drinking party, Plaintiff approached Kirtland Police Officer Volk.  (*Id.* at 28.)  Plaintiff wanted to know why the police were present at a private residence, and wanted the police to provide him with the probable cause that the police had for being at the property.[2] (*Id.*)  Plaintiff told Officer Volk that the kids were just having fun and were not doing anything wrong.  Plaintiff did not like the answers that he was getting from Officer Volk.  Officer Volk informed Plaintiff that Officer Fisher was the investigating Officer.  (*Id.* at 29; Fisher Dep. p. 32.)

Plaintiff began directing his questions Officer Fisher.  (Halasah Dep. p. 32-34.)  Officer Fisher was in the process of releasing one of the other teenagers at this time and, due to Plaintiff's persistent interruptions, he had to stop what he was doing to address Plaintiff.  (Fisher Dep. p. 31, 41-42, 67.)  Plaintiff does not recall what Officer Fisher was doing when Plaintiff began to address the Officer.  (Halasah Dep. p. 35.)

Plaintiff again demanded that Officer Fisher explain the probable cause that the police had for being at the private residence.  (*Id.*at 39.)  Plaintiff told Officer Fisher that he should give A.H. a breathalyser and perform field sobriety tests.  (*Id.* at 38.)  Plaintiff initially refused to provide the police officers with his driver's license or to sign the requisite paperwork for his son's dismissal from the scene.  (*Id.* at 40.)  Plaintiff was upset with these requests because the police had called him out of bed and then asked him to provide documentation.  (*Id.*)

_____

[2]Plaintiff does not claim that the property belonged to him or that the police presence on the property violated any of his constitutional rights.

4

While Plaintiff was making his demands and arguing with Officer Fisher, one of the teenagers, N.P., began to get upset and slammed a cooler.  (Fisher Dep. p. 45.)  Officer Fisher left Plaintiff to address the situation with N.P.  (*Id.* at 42.)  It appeared to Officer Fisher, based upon his training and experience in law enforcement, that N.P. was feeding off of Plaintiff's conduct, and that the Plaintiff's conduct was escalating the situation.[3]  (*Id.* at 55.)

Following his interaction with Officer Fisher, Plaintiff returned to Officer Volk and finally provided his identification, and signed the required paperwork.  Upon completion of this paperwork, A.H. was released to his father's custody and both were free to leave.  (Halasah Dep. p. 45-47.)  Despite being free to leave, Plaintiff refused to do so.  (*Id.* at 42.)  At one point he told police that he was not going to leave until he was able to make sure that N.P. was okay.  (*Id.* at 43.)

Officer Fisher testified that Plaintiff had to be told to leave multiple times.  (Fisher Dep. p. 38.)  Plaintiff apparently denies that Officer Fisher asked him to leave multiple times, but admits the possibility that other officers may have asked him to leave.  (Halasah Dep. p. 43.)  There can be no dispute that the police report prepared by Officer Fisher shortly after the incident states that Plaintiff was asked to leave more than once.  The police report very clearly states that the Plaintiff was asked to leave "several times."  (Fisher Dep., Exhibit A, p. 5.)  Indeed, Plaintiff admitted during his deposition that the police report contains an express reference to Plaintiff being asked to leave several times. (Halasah Dep., p. 45-50.)  Eventually, Plaintiff did leave the scene.  (*Id.* at

---

[3]Indeed, both N.P. and N.P.'s mother told the Kirtland Police Officers that N.P. was "feeding off" Plaintiff's anger.  (Fisher Dep., Exhibit A, p. 3.)

5

48.)  In his motion for summary judgment, Mr. Halasah states that the longest that he could have

been at the scene is 23 minutes.  (Halasah Mot. p. 2.)

Officer Fisher prepared the aforementioned police report when he returned to the police

station.  Regarding the circumstances surrounding Plaintiff's conduct, the report states:

> On Saturday, May 23, 2009 at 0042hrs. as I operated my patrol unit
> (894) into the lot of 8603 Euclid-Chardon Rd. (former SMP
> Wielding Business), I observed two individuals standing next to
> the building (southwest corner of the building).  Due to the
> business closed for business, I exited my patrol unit to investigate
> and the two individuals began running westbound into the east
> lawn of 8581 Euclid-Chardon towards an open garage.
>
> I radioed dispatch of my location, requested additional units while
> attempting to pursue the two individuals.  As I rounded the
> southwest corner of the garage located at 8581 Euclid-Chardon Rd.
> the two individuals were no longer visible.  I located one male
> (later identified as [A.H.]) standing near a fire pit.  Empty cases of
> beer and empty beer cans were scattered around the yard.  Several
> lawn chairs were circled around the fire.  I located a picnic table
> covered with empty beer bottles and red plastic cups.  At this point
> in time Due [sic] to locating only [A.H.] in the back yard, the
> empty beer cans and bottles, I began to form the opinion that I had
> stumbled on an underage party.
>
> I asked [A.H.] if a party was in fact going on. [A.H.] stated that it
> was a party but they ran when someone yelled the police were
> there.  While [A.H.] spoke his speech was slurred and difficult to
> understand and a strong odor of alcohol was also emitting from his
> breath. [A.H.'s] eyes were also found be blood shot red and glassy.
> I asked [A.H.] if he had been drinking alcohol tonight. [A.H.]
> stated that he had been drinking.  I advised [A.H.] to have a seat on
> the back porch steps and to telephone his parent for a ride home.
>
> ***
>
> At this point in time, Amy Smith (Mother of [T.S.]) arrived on
> scene.  While speaking with Smith, Ramzi K. Halasah (Father of
> [A.H.]), and James Hopkins (father of [J.D.H.]) arrived on scene.
> [Officer] Volk was speaking with Halasah while I attempted to

6

explain and complete the release to parent form to Smith.  Halasah became loud and began directing his question towards me due to Volk explaining to him that I was the investigating officer.  Halasah was refusing to cooperate or sign anything.  Halasah wanted to know how I knew his son had been drinking.  I had to stop speaking with Smith and direct my attention towards Halasah who was attempting to escalate the situation.

I approached Halasah and explained to him that his son was intoxicated and that he had already admitted to consuming alcohol.  Halasah stated that he wanted me to prove that his son was drunk and asked me to give him a field test.  I explained to Halasah that I was not going to administer any field tests at this time.  Halasah stated that I was just picking on kids and that he did not understand what the big deal was.

At this point in time, [N.P.] began slamming and kicking the empty coolers that he had stacked in front of the garage. [N.P.] was yelling profanities out and appeared to be fueled by Halasah's argumentative behavior.  I advised Halasah that I was not going to tolerate any further comments about his believes [sic].  I explained to Halasah that he was disorderly and escalating the incident.  I explained to Halasah that any further comments would result in his arrest.

Volk attempted to intervene and asked Halasah for his driver license in order to verify who he was and to fill-out the release to parent form. . . .

***

Volk completed the necessary paperwork (City of Kirtland Police Department's Release to Parent Form) with Halasah.  Volk explained to Halasah that he was free to leave.  I was now speaking to James Hopkins . . . .

After Hopkins left, I overheard Halasah telling Volk that he was not going to leave until his son's friend [N.P.] who was still seated in the rear of my patrol unit) [sic] was alright.  Halasah was still being argumentative and still trying to control the situation.  Volk and I explained to Halasah that it was not his place to be concern [sic] for [N.P.].  Volk explained to Halasah that [N.P.'s] mother was still here and would take responsibility for him.  Halasah was

not satisfied with that explanation and again stated that he was not leaving.  I advised dispatch, who I was speaking with on the phone at this time, to have Sgt Andolsek respond back to the scene.  I explained to dispatch that I was about to make an arrest, and things may get out of hand.

I again reiterated to Halasah that [N.P.'s] mother was still here and would take responsibility for him.  I explained to Halasah that I was giving him a lawful order to leave now with his son.  I explained to Halasah that failure to comply with my lawful order would result in his arrest.  Halasah asked if I could shine my flashlight down the driveway so that he could see his way out.  I explained to Halasah that he was able to walk down it while it was dark and he should be able to manage to walk back out.  Halasah left the scene without any further incident or discussion.

At his point in time, Laura Pollice was upset and asked if [N.P.] was going to be arrested.  Laura Pollice stated that [N.P.] was only getting loud because that man (Halasah) was getting him going (fueling the situation).  I explained to Laura Pollice that I was not going to arrest [N.P.] at this time. . .  I opened the rear door of my patrol unit and Sgt. Andolsek was seated next to [N.P.] and they were talking.  Andolsek had already unhandcuffed [N.P.] Andolsek stated that [N.P.] was upset with himself about throwing the party and afraid of loosing [sic] his girlfriend.  Andolsek stated that [N.P.] was feeding off of Halasah when he (Halasah) was arguing with us (the Police) . . . .

***

NOTE: The above described situation was under control with the exception of Ramzi K. Halasah.  Halasah attempted to escalate the situation and minimize his son and his friends underage drinking.  Halasah attempted to place the blame on the police instead of on his trespassing son and his friends.  Halasah was repeatedly ordered to refrain from his disorderly actions.  Halasah attempted to dictate what was happening and unwilling to cooperate at times.  At being ordered to leave several times he ultimately left.  That being said, Halasah would have been arrested if numerous other individual were still on scene.  Halasah arrest which would have created undue hardship on officers still on scene and other parents en-route to pick up their children [sic].  I believe Halasah committed the following violation of law: Disorderly Conduct.

8

> Failure to comply.  Or all in inclusive.  Obstruction of Official
> Police Business.
>
> This report will be forwarded to the Lake County Juvenile
> Prosecutors Office and prosecutor Michael Germano for review.
> Below I have outlined each individual and potential charges to be
> filed if any.
>
> ***
> Ramzi K. Halasah               Obstruction of Official Police Business
> 2255 Par Lan Apt. #1020        (2921.31A) M2

On June 9, 2009,  the police report and the recommended charges were forwarded to

prosecutor Michael Germano for review.[4]  (*Id.* at 59.)  Prosecutor Germano testified via affidavit

that he reviewed the report, and that he made the decision based upon the police report to charge

Plaintiff with Disorderly Conduct in violation of R.C. § 2917.11(A)(4), a fourth degree

misdemeanor.[5]  (Aff. of Michael Germano, ECF #35, Ex. A.)

The police report added in supplement that Officer Fisher received prosecutor Germano's

recommendation to charge Plaintiff with Disorderly Conduct on June 11, 2009.  The report states:

> On Thursday, June 11, 2009 at 2300 hrs. I located a fax from Prosecutor Michael
> Germano reference the underage party that I encountered on May 23, 2009.
> Germano reviewed my incident report and has recommended that the listed below
> suspects be charged with the following:
>
>
> Ramzi K. Halasah               Persistent Disorderly Conduct

-----

[4]The Kirtland Police Department is a small department with only two officers working each shift.  Reports are only finalized and forwarded to the prosecutor when all patrol duties are completed and can only be prepared by the investigating officer while that officer is on duty.  Shortly after the incident with Plaintiff, Officer Fisher took some time off of work, which delayed finalizing the police report and forwarding the report to the prosecutor.  (Fisher Dep. p. 59-60.)

[5]The charges were later reduced.

Upon receiving the recommendations from the prosecutor, Officer Fisher prepared a Complaint, Summons and Warrant.  (Fisher Dep. p. 62.)  The statutory language of R.C. § 2917.11(A)(4)  provided on the Complaint, Summons and Warrant stated, "No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following: hindering or preventing so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose to the offender."  The language quoted in the Complaint, Summons and Warrant omitted part of the statute which refers to hindering the movement of others.  Specifically, R.C. § 2917.11(A)(4) states:

> (A)  No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
>
> ***
>
> (4)  Hindering or preventing **the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property,** so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender;

R.C. § 2917.11(A)(4) (emphasis added to portion of the statute omitted from the Complaint, Summons and Warrant).

On July 2, 2009, Officer Fisher attended a probable cause hearing before a Magistrate Judge of the Willoughby Municipal Court.  (Fisher Dep. p. 62.)  This hearing occurred in the Magistrate's chambers and was not recorded.  (*Id.* at 63.)  Officer Fisher was under oath during this hearing.  (*Id.*)  Officer Fisher brought his police report and the prosecutor's recommendation to the hearing and provided these documents to the Magistrate to review.  The Magistrate asked

10

Officer Fisher what happened, and Officer Fisher explained the incident, including with respect to the charges brought against Plaintiff, that there had been a verbal argument, that Plaintiff was making demands, and that Plaintiff did not want to cooperate.  Prosecutor Germano testified in his affidavit that Officer Fisher's testimony at the probable cause hearing was consistent with the statements in Officer Fisher's police report.  The Magistrate looked over the Complaint, Summons and Warrant, looked at the prosecutor's ruling and signed the arrest warrant.  (*Id.* at 66.)

After receiving the warrant, Officer Fisher attempted to call Plaintiff to notify him that the warrant had been issued.  (Fisher Dep. P. 57.)  Officer Fisher left a message requesting a return phone call.  (*Id.* at 58.)  There is no evidence that Plaintiff returned Officer Fisher's call.

A Cleveland Police Officer arrested Plaintiff pursuant to the warrant on July 13, 2009.  (Halasah Dep. p. 55-56.)  Plaintiff was transported to a Cleveland jail.  When he was released he had to go to Kirtland to sign some papers.  He was then permitted to leave.  (*Id.* at 59.)  Officer Fisher did not participate in the arrest.  (Fisher Dep. p. 9.)

The case against Plaintiff proceeded to trial.  Plaintiff was ultimately acquitted of the charge of Persistent Disorderly Conduct.  Based on Officer Fisher's incident report and the testimony presented at Plaintiff's bench trial, there was no evidence that Plaintiff hindered or prevented anyone's movement under R.C. § 2917.11(A)(4).  In granting Plaintiff's motion for judgment of acquittal, the Willoughby Municipal Court found that:

> Mr. Halasah's actions did not hinder or prevent the movement of Officer Fisher.  This conclusion is supported by the testimony of Officer Volk who indicated that Officer Fisher voluntarily moved from a location in which he was speaking with one of the parents and walked over to engage in a conversation with Mr. Halasah. Although Officer Fisher's testimony indicated that Mr. Halasah's actions caused him to stop what he was doing and prevented him

11

from performing his duties, this is not a violation of the disorderly conduct statute at issue.

Plaintiff subsequently filed the present lawsuit. As discussed, only Plaintiff's Fourth Amendment false arrest and malicious prosecution claims against Officer Fisher remain.

## II. <u>LEGAL STANDARD</u>

Defendant Officer Fisher has moved under Rule 56 of the Federal Rules of Civil Procedure for summary judgment on Plaintiff's false arrest and malicious prosecution claims brought under 42 U.S.C. § 1983. Likewise, Plaintiff has moved for summary judgment on these claims. Oppositions and Replies to the Motions have been filed. Thus, the Motions for Summary Judgment are ripe for review. In ruling on the Motions, the Court views the record in a light most favorable to the non-movant in accordance with Rule 56.

Summary judgment under Rule 56 is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed .R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists," and the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

With regard to the non-moving party's obligation to set out specific facts showing a genuine issue for trial, "Rule 56 does not impose upon the district court a duty to sift through the

12

record in search of evidence to support a party's opposition to summary judgment." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379-80 (6th Cir. 2007) (citation omitted).  Rather, "Rule 56 allocates that duty to the opponent of the motion, which is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Id.*

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87. The Court's inquiry, therefore, asks whether reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### III.  DISCUSSION

Based on the record that existed at the time, the Sixth Circuit reversed this Court's initial award of summary judgment for Officer Fisher on Plaintiff's Fourth Amendment false arrest and malicious prosecution claims.  The appellate court concluded, at that stage in the litigation, that issues of fact remained regarding whether probable cause existed for Plaintiff's arrest and prosecution. The Sixth Circuit expressly referenced this Court's discretion  to determine, on remand, whether additional defenses might warrant summary judgment in favor of Officer Fisher.

Based on a more fully-developed record, it is now abundantly clear that Officer Fisher is entitled to summary judgment on Plaintiff's allegations of false arrest and malicious prosecution. Plaintiff has failed to present any evidence to negate the existence of probable cause for his arrest or prosecution.

A.    **Probable Cause Existed For Plaintiff's Arrest For Persistent Disorderly Conduct**

Plaintiff's Section 1983 claim for false arrest is based on his allegation that the warrant for his arrest was not based on probable cause.  *See* U.S. Const. Amend. IV (providing that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized"); *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005).  To establish a constitutional claim of false arrest under the Fourth Amendment, a plaintiff must show that no probable cause existed for the arrest.  *Id.*  Probable cause exists if, when considering the totality of the circumstances at the time, the arresting officer had knowledge of sufficient "facts and circumstances . . .to warrant a prudent person . .  In believing . . . that the suspect has committed . . .an offense."  *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) (citation omitted); *see Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010).

In a case such as this one involving an arrest pursuant to a warrant, the matter of whether a constitutional violation has occurred turns on the contents of the facts that were presented to the magistrate in support of the arrest warrant.  This is so because generally,  if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party. *Taylor v. Meacham*, 82 F.3d 1556, 1563-64 (10th Cir. 1996).

The exception to this general rule is that a magistrate's issuance of the warrant will not shield an officer when the warrant affidavit is so lacking in indicia of probable cause as to render

14

official belief in its existence unreasonable.  Nor will it shield an officer when the underlying affidavit includes deliberate or reckless misstatements or omissions.  *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000); *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003).

Plaintiff here argues that the Complaint, Summons and Warrant drafted by Officer Fisher and presented to the Magistrate Judge contained deliberate and reckless misstatement and omissions, such that the arrest warrant was not supported by probable cause.  Specifically, Plaintiff argues that: (1) the police report lacks reference to Plaintiff being asked several times to leave the scene of the underage drinking party, and thus at a minimum creates an issue of fact as to whether the Complaint, Summons and Warrant falsely represented that Plaintiff was asked to leave more than once; and (2) Officer Fisher's omission of the "movement element" of R.C. § 2917.11(A)(4) from the Complaint, Summons and Warrant was deliberate and reckless, and material to the Magistrate's determination of probable cause.[6]

### 1. Officer Fisher's Police Report Does Not Create An Issue of Fact Concerning The Existence Of Probable Cause

Plaintiff's continued insistence that an issue of fact exists because Officer Fisher's police report lacks reference to Plaintiff being asked several times to leave the scene is disturbing – because it is flatly wrong.  Officer Fisher's police report states, in black and white, that, **"At being ordered to leave several times [Halasah] finally left."**  Thus, no tortured manipulation of the

---

[6]Defendants, citing *Voyticky*, 412 F.3d at 677, argue that Officer Fisher cannot be liable for false arrest because he was not the arresting officer or even present at the scene of the arrest. *Voyticky* does not appear to address this issue directly.  In a case where an arrest was made pursuant to a warrant, it seems contrary to the spirit of the Fourth Amendment to hold that a false arrest claim may not be brought against a police officer who set the arrest in motion simply because he was not the arresting officer.  Such a finding would permit an officer to obtain an arrest warrant based on false or incomplete information, and then insulate himself from Fourth Amendment liability simply by absenting himself from the arrest.

15

facts can invent a potential conflict between Officer Fisher's current claim (and that in the criminal complaint) that Plaintiff was asked to leave several times, and the statement in the police report that Plaintiff indeed was "ordered to leave several times."  For Plaintiff to suggest otherwise appears either careless or disingenuous, at best.[7]

That Plaintiff continues to argue this point in light of his deposition, which was taken after the Sixth Circuit's decision, is puzzling to the extreme.  Plaintiff admitted in his deposition that, although he does not precisely remember, it is entirely possible that officers other than Officer Fisher asked him to leave the scene.  In view of this admission and Plaintiff's imperfect recollection, the record lacks any evidence that Officer Fisher fabricated facts in asserting that Plaintiff was asked to leave the scene multiple times.

Plaintiff further asserts, without providing any specific citation to the record, that Officer Volk's testimony at the criminal trial contradicted Officer Fisher's statements that the Plaintiff was asked to leave the scene multiple times before actually doing so.  The Sixth Circuit has held that it is not the obligation of the court to comb the record to find evidence or testimony establishing a party's case.  *Williamson*, 481 F.3d at 379-80.  Moreover, the criminal trial transcript is clear that Officer Volk did not make a single statement that would contradict Officer Fisher's assertion that Plaintiff was asked to leave the scene multiple times.  In fact, Officer Volk was never questioned about how many times Plaintiff was asked to leave the scene.  Accordingly,

---

[7] Plaintiff made the same specious argument to the Sixth Circuit following this Court's initial grant of summary judgment.  Apparently, the Sixth Circuit took Plaintiff's assertion at face value. In the opinion reversing this Court's summary judgment decision, the Sixth Circuit mistakenly stated that, "In addition, according to Officer Fisher's incident report, Halasah was asked to leave only once . . . .  The incident report creates a factual issue as to whether Officer Fisher falsely stated in the criminal complaint that Halasah was 'repeatedly asked to leave before actually doing so.'"

16

there is no showing that Officer Fisher made any misstatements to the Magistrate concerning how many times Plaintiff was asked to leave.

In view of the police report's express reference to Plaintiff being asked to leave the scene several times, Plaintiff's own admission that officers other than Officer Fisher might have requested Plaintiff to leave the scene, and Officer Volk's lack of reference to how many times Plaintiff was asked to leave, Plaintiff cannot point to any evidence to support his claim that an issue of fact remains regarding the number of occasions on which he was requested to depart the scene of the underage drinking party.  Moreover, although much energy has been expended in this case attempting to establish whether Mr. Halasah was asked more than once to leave the scene – and the undisputed evidence indicates that he was – Plaintiff does not explain why any dispute as to this fact would preclude summary judgment in favor of Officer Fisher.  Indeed, given the uncontested evidence showing how Mr. Halasah otherwise behaved at the scene, including creating a disruption that incited disobedience on the part of N.P., and repeatedly preventing Officer Fisher from expeditiously performing his duties, the Court is not persuaded that it is material whether Mr. Halasah was asked to leave more than a single time.

### 2.     Officer Fisher's Omission Of The "Movement Element" From The Complaint, Summons And Warrant Does Not Negate Probable Cause

There likewise is no evidence to establish that Officer Fisher's omission of the "movement element" of  R.C. § 2917.11(A)(4) from the criminal Complaint, Summons and Warrant negates probable cause.  As discussed previously, because an arrest based on a facially valid warrant approved by a magistrate provides a complete defense, *Voyticky*, 412 F.3d at 677, Plaintiff must prove two things by a preponderance of the evidence: (1) that Officer Fisher made the omission

17

"knowingly and deliberately", or with "reckless disregard for the truth"; and (2) such statements or omissions were material (or necessary) to the finding of probable cause. *Vakilian*, 335 F.3d at 617; see *Gregory v. City of Louisville,* 444 F.3d 725, 758 (6th Cir. 2006).

Regarding the first element, Plaintiff, in order to overcome summary judgment, must put forth *some evidence* that the omission must have been made knowingly and deliberately, or with reckless disregard for the truth.  An omission is not *ipso facto* deliberate or reckless simply because it exists.  *Some evidence* must be provided to demonstrate that the omission was something other than negligent or inadvertent.  Indeed, it is well-established law that mere negligence or innocent mistake by a police officer will not provide a basis for a constitutional violation.  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  To overcome summary judgment, Plaintiff cannot rely on the allegations in his Complaint that the omission was knowing and deliberate, or reckless.  Instead, Plaintiff must provide at minimum a scintilla of evidence to support his claims that an omission that was either intentionally or recklessly made.   Fed. R. Civ. P. 56.

Here, there is no evidence to establish that Officer Fisher's omission of the movement element from the Complaint, Summons and Warrant was anything but an unintentional scrivener's error.  Plaintiff has not cited any testimony or other evidence tending to show that Officer Fisher deliberately or recklessly made the omission of law, but instead impermissibly attempts to rely solely on the fact that the omission occurred.  Rule 56 requires more, however.  Particularly at this stage in the litigation, when considerable discovery had been conducted – including the depositions of Plaintiff and Officer Fisher – Plaintiff cannot survive summary judgment without any evidence whatsoever to establish that Officer Fisher's omission was something other than

18

inadvertent.  Plaintiff had the opportunity to take Officer Fisher's deposition following the Sixth

Circuit's reversal of this Court's original grant of summary judgment.  Nonetheless, Officer Fisher

was not asked a single question at his deposition concerning how or why the language was

omitted.  Other than one question about whether Officer Fisher actually was the person to type the

statutory language in the warrant, the omission was not discussed. Given the opportunity to cross

examine Officer Fisher regarding any reasons or motivations he might have had for inaccurately

typing the statutory language, Plaintiff instead took a pass.  The result is that Plaintiff is left

without even a scintilla of evidence tending to show a deliberate or reckless omission that would

negate probable cause, let alone the undisputed evidence necessary to award summary judgment in

favor of Plaintiff.

  Even if it is assumed for the sake of argument that Plaintiff had some evidence to show a

deliberate or reckless omission – which he does not – Plaintiff cannot show that Officer Fisher's

omission of the movement element of R.C. § 2717.11(A)(4) was material to the Magistrate's

finding of probable cause.[8]  The Fourth Amendment requires that, for a police officer to rely on a

court's determination of probable cause, the police officer must include all *material*, or *necessary*,

information in a warrant application so that an impartial Magistrate can properly weigh the facts.

*Sykes*, 625 F.3d at 305 (citing *Wilson*, 212 F.3d at 786-87.)  This requirement is meant to ensure

---

[8]Although the court ultimately acquitted Plaintiff based on the fact that he had not hindered
anyone's movement at the scene, there is no indication that the Magistrate Judge had reason to make
this finding at the probable cause stage.  The Fourth Amendment does not require precise proof that
a crime occurred at the time a police officer arrests or searches a suspect.  The Fourth Amendment,
after all, "necessitates an inquiry into probabilities, not certainty." *United States v. Strickland*, 144
F.3d 412, 415 (6th Cir.1998). Thus, for probable cause to arrest Plaintiff to exist, there would have
to be a belief, not conclusive proof, that a *probability* existed that Plaintiff committed the offense.

19

that a law enforcement officer, who may be unsure about how the law applies to the facts at hand, does not make unilateral decisions regarding the importance of certain potentially crucial facts known only to law enforcement, the defendant, and any other witnesses to the alleged wrongdoing. *See Reedy v. Evanson*, 615 F.3d 197, 214 n. 4, 215-16 (3d Cir. 2010).

To this Court's knowledge, courts that have addressed whether an omission from a warrant application was material (and thus negated probable cause) have dealt almost exclusively – if not solely – with *omissions of fact*.[9]  Indeed, Plaintiff has not cited any cases where a court has held that a police officer's *omission of law* from a warrant application was material.  This is almost certainly because, unlike with facts, a Magistrate Judge has full and complete access to the laws under which the warrant is sought.  In contrast to facts, the law is not known and knowable only by the law enforcement officer applying for the warrant and any other fact witnesses.  Unlike with omitted facts, of which an impartial Magistrate lacks first-hand knowledge, the Magistrate enjoys unfettered access to the statutes governing the charged offense.  It is the Magistrate's responsibility to know the law, or to research the applicable statutes, to make certain that they are correctly cited in the warrant, and not merely rely on the law as typed in the warrant application.  It is not necessary (*i.e.*, material) for a Magistrate Judge with access to the statutes and the training necessary to understand them to rely on a police officer's representation of the law, especially considering the likelihood that the police officer has significantly less legal training than the Magistrate.  Certainly, there is no evidence here that the Magistrate Judge was prevented from

---

[9]The potential exception is the Sixth Circuit's opinion in this case reversing this Court's initial grant of summary judgment in favor of Officer Fisher.  However, the appellate court did not specifically address why Officer Fisher's omission of law was material to the Magistrate Judge's finding of probable cause.  It is possible that this argument was not presented to the Sixth Circuit for consideration.

independently verifying the statutory requirements for a Persistent Disorderly Conduct charge such that it was necessary for him to rely on Officer Fisher's transcription of the statute.

Moreover, the facts here demonstrate that Prosecutor Germano made the independent decision to prosecute Plaintiff under R.C. § 2917.11(A)(4) after reviewing Officer Fisher's police report, and before Officer Fisher drafted the Complaint, Summons and Warrant.  Prosecutor Germano's testimony and the sequence of events make this clear.  Officer Fisher forwarded the police report to Prosecutor Germano on June 9, 2009.  Prosecutor Germano testified that he relied on the report – not any representation of the law by Officer Fisher – in making the decision to charge Plaintiff with Persistent Disorderly Conduct.  Officer Fisher received a fax informing him of Prosecutor Germano's decision to prosecute on June 11, 2009.  The prosecutor's decision to proceed under R.C. § 2917.11(A)(4) was contrary to Officer Fisher's suggestion that Plaintiff be charged with Obstructing Official Business under  R.C. § 2921.31(A).  Only after Officer Fisher received the prosecutor's instruction to proceed with a Persistent Disorderly Conduct charge did he draft the Complaint, Summons and Warrant.  Officer Fisher subsequently attended and testified under oath at the probable cause hearing before the Magistrate Judge.

Plaintiff does not contest the sequence of events showing that Prosecutor Germano made the independent decision to seek an arrest warrant and charges against Plaintiff under R.C. § 2917.11(A)(4).  A law enforcement officer who presents all relevant probable cause evidence to a prosecutor is insulated from a Fourth Amendment claim when such an intermediary makes an independent decision to prosecute unless the officer (1) concealed or misrepresented facts, or (2) brought such undue pressure to bear on the prosecutor that the prosecutor's independent judgment was overcome.  *Snider v. Lee*, 584 F.3d 193, 206 (4th Cir. 2009).  As discussed above, there is no

21

evidence that Officer Fisher concealed from or misrepresented facts to Mr. Germano, including whether Plaintiff was asked multiple times to leave the scene.  Further, there is no allegation that Officer Fisher unduly pressured the prosecutor to pursue an arrest under R.C. § 2917.11(A)(4).  To the contrary, Officer Fisher, in his police report, suggested that charges be brought under R.C. § 2921.31(A).  Nor is there any evidence that Prosecutor Germano was swayed by Officer Fisher's omission in the Complaint, Summons and Warrant, because the Complaint, Summons and Warrant were drafted after the prosecutor decided to pursue an arrest and prosecution under R.C. § 2917.11(A)(4).  And even if there had been such evidence, Officer Fisher's representation of the law could not have been material to the prosecutor's decision to charge under R.C. § 2917.11(A)(4).  Like the Magistrate Judge, the prosecutor had full access to the laws, and did not require Officer Fisher's interpretation of what the statute required.

For the reasons discussed, the undisputed record, which now includes the depositions of Plaintiff and Officer Fisher, reveals that Plaintiff's arrest was supported by probable cause.  As such, Officer Fisher is entitled to summary judgment on Plaintiff's Fourth Amendment claim for false arrest.  Likewise, Plaintiff's summary judgment motion on this cause of action must be denied.

## B.     Probable Cause Existed For Plaintiff's Prosecution For Persistent Disorderly Conduct

Plaintiff's malicious prosecution claim also fails as a matter of law.  Officer Fisher is entitled to summary judgment on this claim.

To succeed on a malicious prosecution claim under Section 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove four things: (1) a

22

criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty as understood in our Fourth Amendment jurisprudence, apart from the initial seizure, and (4) the criminal proceeding was resolved in the plaintiff's favor.  *Sykes*, 625 F.3d at 308-09.

Plaintiff fails to provide any evidence to satisfy the first element of a malicious prosecution claim.  He cannot show that Officer Fisher made, influenced, or participated in the decision to prosecute Plaintiff under R.C. § 2917.11(A)(4).  After Officer Fisher completed his police report, he forwarded it to Prosecutor Germano.  Thereafter, the prosecutor made the independent decision to pursue an arrest warrant and charges for Persistent Disorderly Conduct.  Prosecutor Germano testified that he alone was responsible for this decision, based on his review of the police report. Indeed, Officer Fisher had suggested in his police report an entirely different charge.

Plaintiff also fails to demonstrate evidence in support of the second element of a malicious prosecution claim.  Given this Court's finding that probable cause existed for Plaintiff's arrest, probable cause existed for Plaintiff's prosecution.  There is no evidence of anything that occurred post-arrest and leading up to trial that destroyed probable cause for prosecution.

For each of the reasons stated, Plaintiff's malicious prosecution claim fails.  Officer Fisher is awarded summary judgment on this claim.

### C.     Probable Cause Existed To Arrest And Prosecute Plaintiff Under R.C. § 2921.31(A), Obstructing Official Business

Prior to additional discovery that includes the depositions of Officer Fisher and Plaintiff, the appellate court held that there were, at that stage in the ligation, genuine issues of material fact

as to whether probable cause existed to support a charge of Persistent Disorderly Conduct.  With the benefit of a more fully-developed record, this Court has determined that probable cause did indeed exist  to arrest Plaintiff for Persistent Disorderly Conduct under R.C. § 2917.11(A)(4).

Even absent probable cause to arrest and prosecute Plaintiff for Persistent Disorderly Conduct, there is no doubt that probable cause existed to arrest and charge Plaintiff with violating R.C. § 2921.31(A), Obstructing Official Business.  This is the charge that Officer Fisher suggested in his police report.  Given the existence of probable cause for an arrest under the Obstructing Official Business statute, Officer Fisher is entitled to summary judgment, and Plaintiff's claims fail as a matter of law.  Indeed, the Sixth Circuit has held that "knowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed . . . ." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, fn. 12 (6th Cir. 2005).[10]

Section 2912.31(A) of the Ohio Revised Code provides that:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

R.C. § 2921.31(A).

The crime of Obstructing Official Business contains five elements: (1) an act by the defendant, (2) done with the purpose to prevent, obstruct or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful

---

[10]In reversing this Court's initial grant of summary judgment, the appellate court acknowledged the holding in *Radvansky*, but noted that neither this Court nor Defendants had, at that time, identified another crime for which Officer Fisher had probable cause to arrest Mr. Halasah.

duty, and (5) the defendant acts so without privilege.  *State v. Kates*, 169 Ohio App. 3d 766, 775

(Ohio App. 10 Dist. 2006).  The proper focus in a prosecution for Obstructing Official Business is

on the defendant's conduct, verbal or physical, and its effect on the public official's ability to

perform the official's lawful duties.  *State v. Wellman,* 173 Ohio App. 3d 494, 218 (Ohio App. 1

Dist., 2007).

Plaintiff concedes in his briefing that Officer Fisher can easily demonstrate the first

element of Obstructing Official Business.  Plaintiff committed an act by persistently interrupting

Officer Fisher while Officer Fisher was working with other juveniles and parents at the scene of

the underage drinking party, demanding that police perform sobriety tests on his son, inciting N.P.

to act belligerently, and refusing to leave the scene after his son was released.

Likewise, the undisputed evidence shows that the third and fourth elements of Obstructing

Official Business are met.  Officer Fisher testified that Plaintiff impeded Officer Fisher in the

expeditious performance of his duties.  There can be no question that Officer Fisher was

performing a lawful duty by investigating criminal activity at the underage drinking party and

releasing minors to their parents.

The purpose with which someone commits an act, as is at issue in the second element of

Obstructing Official Business, can be inferred by the manner in which it is done, the means used,

and all of the other facts and circumstances in evidence.  *Wellman*, 173 Ohio App. at 499.

Plaintiff's conduct – as he demanded attention while Officer Fisher was working with others,

initially refused to fill out paperwork and show identification, incited N.P. to act out, and refused

to leave the scene – at the very least establishes a reasonable belief on Officer Fisher's part that

Plaintiff intended to obstruct official police business.  Likewise, Plaintiff's conduct gives rise to a

25

reasonable belief that he had no privilege to act as he did.  Thus, at a minimum, there was probable

cause for Officer Fisher to believe that Plaintiff intended to obstruct official police business.[11]  *See*

*Wellman*, 173 Ohio App. 3d at 489.

Because the arrest and prosecution were supported by probable cause, Officer Fisher is

entitled to summary judgment.  All claims against him are dismissed.[12]

### D.    Officer Fisher Is Entitled To Qualified Immunity

Even if probable cause did not exist for Plaintiff's arrest and prosecution, Officer Fisher

claims that he cannot be liable in a civil action because he is protected by qualified immunity.

This Court agrees.

Qualified immunity is an affirmative defense that protects government officials performing

discretionary functions from civil suits if "their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald,* 457 U.S. 800, 818 (1982). To determine whether qualified immunity is warranted, a

---

[11]Plaintiff claims that he was privileged as a parent of the accused minor to ask Officer Fisher questions. Plaintiff's right to ask questions is not at issue.  At issue here is the manner in which Plaintiff asked his questions.  The uncontested evidence shows that he was argumentative, belligerent in refusing to fill out paperwork or show identification, disruptive of Officer Fisher's conversations with other minors and their parents, and that his behavior encouraged N.P. to act out. Moreover, Plaintiff's unsupported claims to the contrary aside, the evidence shows that Plaintiff refused to depart the scene until he had been asked to leave multiple times.

[12]Plaintiff asserts that Count I of his Complaint "General § 1983 Violations" is still viable following remand from the Sixth Circuit Court of Appeals. This position is untenable. Section 1983 does not alone create substantive rights.  Rather, Section 1983 provides a mechanism for enforcing individual rights independently secured by the Constitution and the laws of the United States. *Johnson v. City of Detroit*, 446 F.3d 614, 618 (6th Cir. 2006) *citing Gonzaga Univ. v. Doe*, 526 U.S. 273, 285 (2002).  Consequently, there is no general cause of action for violating Section 1983.  As a result, to the extent that Plaintiff continues to assert a cause of action for general Section 1983 violations, Plaintiff's claim fails as a matter of law.

court must ask (1) whether the alleged facts, taken in a light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established in the specific context so that a reasonable official would understand that he is violating that right. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). A court need not address these steps in any particular order, nor must a court address both steps if the defendant makes an insufficient showing on one.[13] *Pearson v. Callahan*, 129 S.Ct. 808, 821 (2009).

This Court has determined that Officer Fisher did not violate Plaintiff's constitutional rights. Officer Fisher is thus entitled to qualified immunity.

Even assuming that Officer Fisher violated Plaintiff's constitutional rights, Officer Fisher is nonetheless entitled to qualified immunity because Plaintiff cannot prove the second element of the qualified immunity analysis. The second element of this analysis establishes that qualified immunity is appropriate if a reasonable person in the defendant's position could have failed to appreciate that a clearly established constitutional right would be violated by his conduct. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The court must employ a standard of objective reasonableness and analyze claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the officer's position could have believed that his or her conduct was lawful, in light of clearly established law and the information that he possessed. *Adams v.*

---

[13]Whether a defendant is entitled to qualified immunity is a purely legal question appropriate for summary judgment, but summary judgment is inappropriate where "the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury." *Adams v. Metiva*, 31 F.3d 375, 287 (6th Cir.1994). Therefore, this court must view the disputed facts in a light most favorable to the plaintiff when making its determination on the issue of qualified immunity. *Kelley v. LANs*, No. 3:05-CV-7474, 2007 U.S. Dist. LEXIS 51944, at * 13-14 (N.D. Ohio Jul. 18, 2007).

*Metiva*, 31 F.3d 375, 386 (6th Cir. 1994).  Qualified immunity protects the officer from making a mistake, regardless of whether his error is a mistake of law, mistake of fact or a mistake based on mixed questions of law and fact."  *Pearson*, 555 U.S. 223, 231 (2009).  Officer Fisher is protected in this case because it was reasonable for him to rely on Prosecutor Germano's assessment that charges should be filed against Plaintiff under R.C. § 2917.11(A)(4), Persistent Disorderly Conduct.

Courts have long recognized that, "As a practical matter, a police officer must be able to rely on the advice of prosecutors.  The judicial system depends upon this reliance."  *Donovan v. Briggs*, 250 F. Supp. 2d 242, 257 (W.D.N.Y. 2003) (village police chief's reliance on District Attorney's "relatively more expert opinion that probable cause existed was objectively reasonable as a matter of law"); *see also Williams v. Fedor*, 69 F. Supp. 2d 649, 677-78 (M.D. Pa. 1999) (under objective-reasonableness standard, officers could rely upon district attorney's advice and believe that they were not violating plaintiff's rights by proceeding with perjury prosecution); *East Coast Novelty Co. v. City of New York*, 781 F. Supp. 999, 1011 (S.D.N.Y. 1992) (officer was entitled to qualified immunity because she was entitled to rely on advice of counsel in drafting and executing warrant and she did not exceed that advice.)

Consultation with a prosecutor is a factor to be considered in evaluating whether an officer acted reasonably.  *See Cox v. Hainey*, 391 F.3d 25 (1st Cir. 2004) (officer was entitled to qualified immunity because he met with the prosecutor, discussed the case and the prosecutor stated that the officer had probable cause); *Konja v. Seitzinger*, 363 F. 3d 645, 648 (7th Cir. 2004) (awarding officer qualified immunity and holding that the officer's consultation with prosecutor "goes far" to establish qualified immunity); *Dixon v. Wallowa County*, 336 F.3d 1013 (9th Cir. 2003) (a

28

reasonable officer could have believed that his conduct was lawful based on the prosecutor's advice); *Wadkins v. Arnold*, 214 F.3d 535, 543 (4th Cir. 2000) (police officer who consulted with prosecutor and obtained a warrant from the magistrate judge acted reasonably and was, therefore, entitled to qualified immunity).

The undisputed evidence shows that Officer Fisher acted "by the book" in consulting with Prosecutor Germano, and that he reasonably relied upon the prosecutor's advice to proceed under R.C. § 2917.11(A). Once the scene of the underage drinking party was cleared, Officer Fisher prepared a detailed police report. He then forwarded that report to the prosecutor. As previously discussed, there is no evidence that Officer Fisher misrepresented or withheld facts from the prosecutor, or in any way attempted to unduly influence the decision to prosecute. The prosecutor reviewed the police report and made recommendations that charges should be filed against the individuals involved, including Plaintiff. Officer Fisher then provided the information in the police report and the prosecutor's recommendation to the Magistrate Judge. Officer Fisher spoke with the Magistrate Judge under oath. The Magistrate Judge then determined that probable cause did in fact exist, and issued the arrest warrant.

There are no facts to suggest that Officer Fisher acted other than how an objectively reasonable police officer would conduct himself in light of the prosecutor's instructions on how to proceed. Thus, he is entitled to qualified immunity. Officer Fisher's Second Motion for Summary Judgment is granted, and Plaintiff's Motion for Summary Judgment is denied.

## IV. <u>CONCLUSION</u>

For all of the foregoing reasons, the Second Motion for Summary Judgment filed by

Officer Fisher (ECF #35) is GRANTED. The Motion for Summary Judgment filed by Plaintiff

Ramzi Halasah (ECF #36) is DENIED.

All costs are to be borne by the Plaintiff.

IT IS SO ORDERED.

<u>s/Donald C. Nugent</u>
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATED: <u>May 20, 2013</u>